**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JUSTOURS, INC., a Delaware corporation; PUERTO VALLARTA ACQUISITIONS, INC., a Delaware corporation, | |
| | Case No.: 2:17-cv-0078-GMN-CWH |
| Plaintiffs, | **ORDER** |
| vs. | |
| BOGENIUS GROUP, LLC, a California limited liability company; ANDREW BOGGERI, an individual; DOES I through X; and ROE CORPORATIONS I through X, | |
| Defendants. | |

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 5), filed by Defendants Bogenius Group, LLC, and Andrew Boggeri (collectively "Defendants"). Plaintiff JusTours, Inc., ("Plaintiff") filed a Response, (ECF No. 7), Defendants filed a Reply, (ECF No. 9), and Plaintiff filed a Surreply, (ECF No. 14). For the reasons discussed below, the Court **GRANTS** Defendants' Motion.

**I.     BACKGROUND**

This case arises out of an agreement where Plaintiff purchased Defendants' assets for travel packages and event packages in Puerto Vallarta, Mexico. (Compl., ECF No. 1). Plaintiff sells these packages to college students and wanted to do business with Defendants due to them allegedly operating a "turn-key" spring break destination located in Puerto Vallarta. (*Id.* ¶¶ 7–8). According to Plaintiff, Defendants made false representations to Plaintiff that they had exclusive relationships with vendors, businesses, and nightlife operators in Puerto Vallarta. (*Id.* ¶¶ 21–22). Plaintiff asserts that because of this, Defendants failed to deliver the assets required

under the Asset Purchase Agreement (the "Agreement"), and have additionally failed to make the $30,000.00 payment required under the Agreement. (*Id.* ¶ 23). Based on these allegations, Plaintiff asserts the following claims in its Complaint: (1) declaratory relief as to Plaintiffs' rescission of assert purchase and Agreement; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) violation of Nevada's Deceptive Trade Practices Act; or (5) in the alternative, breach of the Agreement; and (6) in the alternative, breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 35–79).

In the instant Motion, Defendants argue that the Court should compel arbitration of these claims in accordance with the arbitration provision in the Agreement. (Mot. to Compel 3:4–5, ECF No. 5). Defendants assert that Plaintiff agreed, in a signed writing, to the terms of the Agreement on March 27, 2015. (Mot. to Compel 3:7–9); (*see* Agreement, Ex. A to Compl., ECF No. 5-1). The arbitration provision in relevant part states:

> Arbitration. Any controversy or claim arising out of or relating to this Agreement or the Related Agreements, or the breach thereof, of or relating to any interpretation, construction, or performance of this Agreement, shall be settled by arbitration to be held in Las Vegas, Nevada or other location where Company's headquarters are located in accordance with the rules then in effect of the American Arbitration Association. The arbitration shall be conducted by a single arbitrator, and such arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. The prevailing party will be entitled to receive from the non-prevailing party all costs, damages and expenses, including reasonable attorney' fees, incurred by the prevailing party in connection with that action or proceeding.

(Agreement, Ex. A to Compl. § 9.13). Because of this arbitration policy, Defendants assert that this case should be stayed pending arbitration or, in the alternative, dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See* Mot. to Compel 19–22).

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act (the "FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

## III. DISCUSSION

Plaintiff asserts that the arbitration clause in the agreement is void and unenforceable because the agreement was rescinded by Plaintiff and Defendants prior to this suit's filing. (Resp. 2:5–11). Additionally, Plaintiff asserts that if the provision is valid, then it is governed

by Nevada law and Nevada law holds the provision void "because it does not contain a separate and specific authorization for the affirmative agreement of the parties to arbitrate." (*Id.* 2:12–15).

Defendants contend that the agreement was never rescinded because what Plaintiff alleges to be Defendants' acceptance of the rescission was Defendants' rejection and counter-offer. (Reply 2:1–2). Moreover, Defendants state that the FAA preempts Plaintiff's Nevada law, and even if it did not, Plaintiff authorized the agreement and drafted the agreement. (*Id.* 2:8–15). The Court will first address the validity of the agreement and then address the Nevada law argument.

**A. Validity of the Agreement**

Plaintiff asserts that "the [ ] Agreement, including the arbitration provision, was mutually rescinded by the parties prior to commencement of this action." (Resp. 6:23–24). Plaintiff contends that on November 15, 2016, Plaintiff gave Defendants notice of Plaintiff's rescission of the Agreement, and on November 29, 2016, Defendants accepted. (*Id.* 6:24–7:3).

Defendants counter that Defendants' e-mail agreed to the Rescission Agreement "on the condition that they retain all rights to file suit against Plaintiff[ ] for damages arising out of the [A]greement." (Reply 2:4–5). Moreover, Defendants never signed the Rescission Agreement. (Reply 3:9); (Ex. 2 to Response at 7). Defendants state that although their e-mail accepted the offer of the rescission, "the email also conditions acceptance on material changes to the agreement." (Reply 3:18–20).

In Nevada, if a contract is rescinded, the contract is no longer enforceable. *Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713 (Nev. 2007). However, "[n]o principle is better settled than that a party cannot rescind a contract and at the same time retain possession of the consideration, in whole or in part, which he has received under it. He must rescind *in toto*, or not at all." *Bishop v. Stewart*, 13 Nev. 25, 41 (1878); *see Ford v. Wertheimer*, 452, 386 P.2d

611, 614 (Nev. 1963) (holding that upon granting a rescission, a party must be placed in status quo and must restore the consideration as equitably as possible).

Here, Defendants' response to Plaintiff's offer with a change in terms can only be construed as a counteroffer, which Plaintiff failed to accept. Further, there was no restoration of consideration to render the Agreement rescinded. Because the parties did not rescind *in toto*, the Court does not find that the parties rescinded the Agreement.

Moreover, Plaintiff argues that "Defendants accepted the first independent purpose of the letter by agreeing to rescission of the [ ] Agreement" and that "Defendants rejected the second independent purpose of the letter by rejecting Plaintiffs' offer to resolve the damages without litigation," (Surreply 4:1–3, ECF No. 14). The Nevada Supreme Court, however, holds that "[w]hether a contract is entire, or separable into distinct and independent contracts, is a question of the intention of the parties, to be ascertained from the language employed and the subject-matter of the contract." *Sprouse v. Wentz*, 781 P.2d 1136, 1140 (Nev. 1989) (citing *Linebarger v. Devine*, 214 P. 532, 534 (Nev. 1923)).

Based on the facts at hand, the parties intended these two issues be related and not to be "independent" of each other as Plaintiff contends. The two matters were discussed in relation to each other, and parties addressed them in the same proposed document and in the same chain of exchanges. (*See generally* Exs. 2, 3 to Resp.). The issues were discussed in congruence with each other and, based on the nature of a rescission and damages, are intricately hand-in-hand. Although Plaintiff tries to assert that these issues are distinct because Defendants addressed them in two separate sentences, (*see* Surreply n.3), the Court finds the terms to be part of a single contract. Accordingly, the Court holds that the Agreement was not rescinded.

**B. Nevada Law**

Plaintiff asserts that the FAA does not apply in this case because "the [ ] Agreement provides it is to be 'governed by and construed in accordance with' Nevada state law." (Resp.

5:6–7). Specifically, Plaintiff avers that the correct statute governing the clause is NRS § 597.995, which provides that an agreement requiring arbitration must "include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision." NRS § 597.995(2).

In support, Plaintiff cites to the Nevada Supreme Court's recent decision in *Fat Hat, LLC v. DiTerlizzi*, 385 P.3d 580, 2016 WL 5800335 (Nev. 2016). There, the Nevada Supreme Court held that the parties' signature on a general signature line indicating consent to all terms of the contract did not provide specific authorization for arbitration pursuant to NRS § 597.995. *Fat Hat*, 2016 WL 5800335 at *2. Plaintiff then concludes "[t]hus, the arbitration provision is also void and unenforceable under NRS § 597.995." (Resp. 8:2).

However, as Defendants point out, *Fat Hat* does not address NRS 597.995's applicability under the FAA. (Reply 4:12). Moreover, the Supreme Court holds that when a state law requires a more exacting standard for arbitration agreements than is applicable to contracts generally, then the FAA displaces the state law's requirements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citing numerous previous Supreme Court opinions holding that state legislation requiring greater information or choice in the making of agreements to arbitrate than in other contracts is preempted by the FAA). As such, Plaintiffs are still bound by the FAA.

Because parties did not effectively rescind the Agreement, and the FAA applies, a valid agreement to arbitrate exists. *See Lee*, 737 F.3d at 1261. Additionally, neither party argues that the Agreement does not encompass the dispute at issue. *See id.* Accordingly, the Court grants Defendants' Motion to Compel.

I. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration, (ECF No. 5), is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED without prejudice** because Plaintiffs must first comply with the arbitration requirements. The Clerk is instructed to enter judgment accordingly and close the case.

**DATED** this __25__ day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge